UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR418-262 |
| | ) | |
| HOSEA SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMENDATION

Before the Court are three motions to suppress filed by Defendant. The Court held a hearing on February 21, 2019. After consideration of the briefs, along with the information provided during the hearing, the Court recommends as follows.

Defendant's initial suppression motions, doc. 15 and doc. 16, were wholly without foundation. *See, e.g.*, Doc. 35 (ordering defendant to provide factual support or risk the denial of his motions). As a result, those motions should be **DENIED**. After prompting from this Court, Defendant filed a Motion to Suppress DNA Report that provided suitable factual support for this Court to address. Doc. 36. In that motion, defendant argues that the gun, which forms the foundation of this firearm possession case, was handled by the police using a t-shirt belonging to defendant. Doc. 36 at 1. Defendant argues that using this t-shirt cross-

1

contaminated the firearm and that the DNA evidence found on the firearm is prejudicial and should be suppressed under Fed. R. Evid. 702 and the Sixth Amendment. At the hearing, defendant's attorney jettisoned any Sixth Amendment argument in favor of arguing that the DNA evidence should not be presented for two reasons. First, it is improper expert testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Second, the evidence is more prejudicial than probative and should be excluded under Fed. R. Evid. 403.

As an initial matter, this motion is more aptly compared with a motion in limine than a suppression motion. Suppression motions seek to prevent the use of illegally obtained evidence, *see, e.g., James v. Illinois*, 493 U.S. 307, 311 (1990) ("The occasional suppression of illegally obtained yet probative evidence has long been considered a necessary cost of preserving overriding constitutional values."), while motions in limine seek to address the admissibility of certain evidence before the Court, *see, e.g., MacMillan v. Roddenberry*, 432 F. App'x 890, 893-94 (11th Cir. 2011) ("Macmillan's motion in limine sought to bar the admissibility of his prior arrests . . ."). Defendant did not—either in his motion or in court—argue that the DNA evidence was unlawfully obtained.

Turning to the arguments defendant did make, it is clear that there is not enough to justify excluding the evidence at this time. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court interpreted Rule 702 stating that the rule "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*citing Daubert*, 509 U.S. at 589 n.7, 597). The U.S. Supreme Court later held that "*Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (*citing* Fed. R. Evid. 702). Having incorporated these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702.

In this circuit, the Court applies a three-pronged inquiry to determine whether an expert's testimony complies with Rule 702 and *Daubert*. The Court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (citations omitted). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n. 10.

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").

The reliability "criterion remains a discrete, independent, and

important requirement for admissibility." *Frazier*, 387 F.3d at 1261. The Supreme Court in *Daubert* "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261. Lastly, expert opinion testimony must assist the trier of fact. *Id.* "By this requirement, expert testimony is admissible if it concerns matters that

5

are beyond the understanding of the average lay person." *Id.* (citation omitted).

Defendant challenges neither the qualifications of the person who performed the DNA test nor the result which was reached, *i.e.* that defendant's DNA was found on the gun. Defendant did state that DNA evidence is "ubiquitous," but did not argue that an expert's testimony at trial would be helpful in understanding how that evidence was procured. Defendant also argues that the individual who performed the DNA test was unaware of how the gun was handled, relying on the advisory committee notes to Rule 702 to suggest that the DNA test may be somehow unreliable. However, the question of *how* defendant's DNA came to be on the firearm involved in this case is separate and apart from the question of *whether* that DNA was found on the gun. Since the DNA report addresses the latter—rather than the former—defendant's argument as to the test's reliability is unavailing.

Likewise, defendant relied heavily on the argument that because DNA evidence is commonly relied upon in criminal cases, introducing evidence of arguably tainted DNA evidence would be more prejudicial than probative under Fed. R. Evid. 403. However, the DNA report itself

acknowledges its limits by stating that "DNA-containing fluids can be potentially transferred to an object . . . when handling or touching the object." Doc. 36-1 at 2. It is clear, therefore, that there is no attempt at subterfuge on the part of either the Government or the DNA expert. And defendant does not articulate why DNA's common presence in criminal trials makes the jury incapable of weighing the reliability of a particular DNA test against the possibility for cross-contamination. He merely asserts that it would. In the face of such a conclusory argument supported neither by references to case law or the record, the Court cannot determine that the DNA evidence is so prejudicial that its probative value is so outweighed by prejudice that it should be jettisoned from presentation at trial. Nevertheless, the Court acknowledges that this case is not yet scheduled for trial and these "motions in limine" style arguments are better left for determination closer to trial. With that understanding, the Court should **DENY** defendant's Motion to Suppress DNA Evidence, doc. 36, **WITHOUT PREJUDICE** to refile a motion to exclude this evidence at a later date.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.

Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 22nd day of February, 2019.

/s/ Christopher L. Ray
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia