**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

v.

HOSEA SCOTT,

    Defendant.

CASE NO.: 4:18-cr-262

## **O R D E R**

This matter is before the Court on the Government's "Ex Parte Giglio Disclosure," (doc. 70)[1] and "Supplement to Ex Parte Giglio Disclosure, Motion in Limine to Withhold Disclosure of Certain Information and Motion for a Protective Order," (doc. 74). Through these pleadings, the Government has provided materials to the Court regarding an internal affairs

---

[1] This pleading was docketed as a Motion. The Clerk of Court is hereby directed to terminate that Motion on the docket of this case. Additionally, this Order shall not be filed under seal. However, the Court hereby **ORDERS** that the Government's filings, (docs. 70, 74), and all attachments thereto remain **UNDER SEAL**. The right of access to judicial records pursuant to common law is well-established. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992). This right extends to the inspection and the copying of court records and documents. See Nixon, 435 U.S. at 597. The right to access, however, is not absolute. See Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 598 (1982). When deciding whether to grant a party's motion to seal, the court is required to balance the historical presumption of access against any significant interests raised by the party seeking to file under seal. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001); Newman v. Graddick, 696 F.2d 796, 803 (11th Cir. 1983). In balancing the interests, courts consider, among other things,
> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

Romero v. Drummond Co., Inc., 480 F.3d 1234, 1246 (11th Cir. 2005). Additionally, "[a] party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." Id. (citing Nixon, 435 U.S. at 598). Here, given the nature of the information in the Government's filings and attachments, filing those documents on the public docket would harm the legitimate privacy interest of individuals involved in the internal affairs investigation and could impair the investigation. Moreover, while the information does concern a police officer, it does not concern any actions taken in his official position or other issues of public concern. All of these reasons support maintaining the Government's filings, (docs. 70, 74) under seal.

investigation of one of the officers involved in the apprehension and arrest of Defendant. The Government contends that this trial may be fairly conducted without disclosure of the materials to the Defendant and asks the Court to rule accordingly. The Court has conducted an extensive *in camera* review of all of the material provided by the Government. As laid out below, the Court does not find that any of these materials contain information that the Government is required to disclose to the Defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

Therefore, the Court **GRANTS** the Government's Motion in Limine to Withhold Disclosure and **DENIES AS MOOT** the Government's Motion for a Protective Order. However, as laid out below, the Court has concerns regarding the timing and manner that these issues were brought before the Court. Thus, the Court provides further instructions to the prosecution team to ensure that it fulfills its obligations under Brady, Giglio, and their progeny.

## BACKGROUND

In this matter, the Government charges that the Defendant, Hosea Scott, violated 18 U.S.C. 922(g)(1) on March 27, 2018 by possessing a firearm after having been convicted of a felony offense. (Doc. 1.) The Government filed the Indictment in this case on November 8, 2018. (Id.) Defendant filed a Motion for Disclosure of Exculpatory Material as well as a Motion for Release of Brady Materials and Supporting Brief on November 30, 2018. (Docs. 22, 23, 24.) Through those Motions, Defendant requested all potentially exculpatory materials and all materials that could potentially impeach governmental witnesses pursuant to Brady and Giglio. (See, e.g., Doc. 22, p. 3.) On December 21, 2018, the Government filed its response to Defendant's discovery motions. (Doc. 33.) Therein, the Government promised to "provide all materials of an exculpatory or arguably favorable nature, together with all information pertaining

2

to its witnesses of an arguably impeaching nature, as soon as practicable after they are received by the United States Attorney's Office" and that it "recognizes its continuing duty to provide such materials as they become available." (Id. at pp. 5, 8.) The Government stated that it would "provide [D]efendant with any information of an impeaching or exculpatory nature not later than 10 days prior to the trial of this case." (Id. at p. 6.) However, the Government also stated that it would "provide exculpatory, arguably favorable, or impeaching information on an immediate and continuing basis." (Id. at p. 8.)

United States Magistrate Judge Christopher Ray held a Motions hearing on February 21, 2019. Based on the parties' announcement at that hearing, Judge Ray dismissed several discovery motions as moot, including Defendant's Motions for Disclosure of Exculpatory Material and Release of Brady Materials, (docs. 22, 23). (Doc. 41.)

On April 9, 2019, the Court set this matter down for a pretrial conference and for trial. (Doc. 54.) The trial is set to commence on June 18, 2019. (Id.) On the day before the pretrial conference, June 10, 2019, the Government filed an Ex Parte Giglio Disclosure. (Doc. 70.) In that disclosure, the Government notified the Court that on April 25, 2019, approximately two months prior, the Chief Assistant District Attorney for the Eastern Judicial Circuit had placed one of the police officers involved in the arrest of the Defendant on a "Giglio list."[2] (Id. at p. 1) When the officer was placed on the list, the Government apparently only knew that the officer was under an internal affairs investigation by the Savannah Police Department concerning issues of truthfulness. (Id.) The Government disclosed this limited information to Defendant's counsel on April 25, 2019, and also told Defendant's counsel that the Government would not call the officer as a witness during the trial of this case. (Id.) In its June 10, 2019 disclosure to the

---

[2] The Government disclosed the identity of the officer, and the Court and Defendant are aware of the officer's name. However, the Court will not use the officer's name in this Order.

3

Court, the Government relayed that, by speaking with state prosecutors, it had learned that the investigation pertained to allegations that occurred when the officer was off duty and not acting in his official capacity.[3] (Id. at pp. 1–2.) The United States Attorney's Office requested the files pertaining to the investigation, but the District Attorney's office declined to provide them.[4] (Id. at p. 1.) However, the Government also relayed that it had considered the facts concerning the investigation and "determined that there is no evidence that [the officer] was untruthful or dishonest during this investigation and no evidence to suggest any bias against Defendant Hosea Scott." (Id. at p. 2.) The Government also reiterated that it did not intend to call the officer as a witness. (Id.)

At the pretrial conference on June 11, 2019, counsel addressed the Court regarding these issues. Defendant's counsel explained that while the Government did not intend to call the officer, the officer was on the Defendant's witness list. Defense counsel also argued that given the officer's role in the arrest of Defendant, he needed additional information pertaining to the officer's internal affairs investigation to adequately defend the charges against his client. The Court proposed an *in camera* review whereby the Court could determine if the investigation materials contained any exculpatory or impeachment information that should be disclosed to the defense.

Following the pretrial conference, the Government provided its supplemental *ex parte* disclosure to the Court, (doc. 74). In that disclosure, the Government explained that the United States Attorney's Office had recently received a sealed envelope from the District Attorney's Office that contained various police reports and interviews concerning the internal affairs

---

[3] The Government relayed the nature of the allegations against the officer to the Court in its original *ex parte disclosure*.

[4] It is not clear when the Government requested those files.

4

investigation. (Id. at p. 2.) The Government provided those reports and interviews to the Court, and the Court has filed all of them under seal on the docket of this case. The Government reiterated its position that it would not call the officer under investigation to testify in this case and argued that the files and nature of the investigation into the officer need not be provided to the defense. (Id. at pp. 3–5.) However, the Government requested a protective order in the event that the Court found that any items should be disclosed. (Id. at pp. 5–7.) The Court conducted a painstaking review of these files containing hours of interviews and several investigative summaries.

## DISCUSSION

For decades it has been well-established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. "This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154). Put simply, "[a] Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869 (2006). Importantly, Brady and Giglio obligations apply to evidence possessed by the entire prosecution team, which includes both the investigators and the prosecutors. See Kyles v. Whitley, 514 U.S. 419, 437 (1995) (rejecting state's argument that evidence known only to police but not prosecutor should escape Brady's disclosure requirements); United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989) ("Brady and its progeny apply to evidence possessed by a district's 'prosecution team,' which includes both investigative and prosecutorial personnel.").

Prior to turning its attention to the substance of the at-issue Motions, the Court must first express its displeasure in the parties' ill-timed presentation of these matters. The internal affairs investigation into this officer dates back to April of 2018, and the United States Attorney's Office and Defendant's counsel have known of the investigation since April of 2019.[5] However, both the United States Attorney's Office and Defendant's counsel waited until the day before the pretrial conference several months later to bring this issue to the Court. This has forced the Court to conduct an extensive review of a significant amount of materials in the midst of preparing for trial.

The Court is also deeply concerned that the substance of the internal affairs investigation was a mystery to the United States Attorney's Office until the eve of trial. Particularly concerning is the fact that the United States Attorney's Office requested the internal affairs files and the District Attorney's Office declined to provide them. (Doc. 70, p. 2.) The obligation to turn over exculpatory and impeachment information extends to the entire prosecution team, not just the prosecuting attorneys. In this case, like many, local law enforcement is a significant part of that prosecution team. Indeed, the officer under investigation himself is a part of the investigation and, thus, a part of the prosecution team. He and the Savannah Police Department have known since April of 2018 that he was the subject of an internal affairs investigation. However, the United States Attorney's Office apparently did not learn of that investigation until approximately one year later. Even then, this information came from the District Attorney's Office rather than the Savannah Police Department. The United States Attorney's Office did not obtain any files regarding the substance of the investigation until months later. Even now, the

---

[5] Apparently, this issue appeared on the United States Attorney's Office's radar when the District Attorney's Office placed the officer on its Giglio list in April of 2019. As discussed below, it is unclear to the Court why the District Attorney's office waited until a year after the Internal Affairs Investigation began to place the officer on this list. From the Court's review of materials, there do not appear to be any developments in the investigation that warrant this delayed placement.

District Attorney's Office appears to be the office determining what files the United States Attorney's Office receives and when it receives them. For the prosecution team to fulfill its constitutional obligations under Brady and Giglio, the prosecuting attorneys must be able to review all materials within the possession of the entire prosecution team to determine whether those materials contain exculpatory or impeachment information. That requires all members of the prosecution team, including the investigators, to provide information that they possess to the United States Attorney's Office.

To be clear, the Court does not know enough about the interactions between the United States Attorney's Office and the various agencies involved in this case to place blame for the tardiness of the exchange of information. However, it is simply not good enough for the Government's lawyers to state that they could not turn over information because it was in local law enforcement's possession. The Court understands that given the nature of an internal affairs investigation, few—if any—individuals at the local police department will have full knowledge of the contents of investigative files.[6] However, there appears to be a disconcerting disconnect among the prosecutorial team in this case. If the United States and local law enforcement choose to coordinate and indict cases in this Court, they must also work together to lawfully prosecute those cases.

The Court is also concerned by the fact that the investigation into this officer is "ongoing," (doc. 72, p. 2), and the officer was only placed on the District Attorney's "Giglio list" on April 18, 2019, (doc 70, p. 1). The most recent files provided by the Government and reviewed by the Court date to May of 2018. Those files do not explain why the investigation is still open or why the officer was not placed on the "Giglio list" until April of 2019. When

---

[6] However, again, the officer is a member of the prosecution team and, at the very least, he was aware of this investigation in April of 2018 and the United States Attorney's Office did not learn of it until a year later.

coupled with the apparent reluctance to provide the United States Attorney's Office with information relating to this internal affairs investigation, these relatively recent developments create uncertainty as to whether the Court has the full picture. Accordingly, the Court **ORDERS** the United States Attorney's Office to make efforts, including contacting the entire prosecution team, to make certain that all information pertaining to this internal affairs investigation, as well as all other potentially exculpatory or impeachment information, has been provided to the United States Attorney's Office.

The Court will now address the substantive issues raised in the Government's Motions. The Government contends that, even if the internal affairs investigation contains information that could be used to impeach the police officer in question, it has no obligation to turn over that information because it does not intend to call the officer as a witness. (Doc. 74, p. 5.) After conducting its own research, the Court has found support for this position; some courts have held that the government's obligation to disclose purely impeachment evidence only applies to government witnesses. See United States v. Bodkins, 274 F. App'x 294, 300–01 (4th Cir. 2008) ("[Defendant] argues that it is inconsequential whether [a witness about whom the government did not disclose agreement with the government] was a government witness or a witness testifying on his own behalf. Nevertheless, he has not set forth and we have not found any controlling authority to sustain his contention."); United States v. Souffront, 338 F.3d 809, 824 (7th Cir. 2003) ("Impeaching the testimony of [the defendant's] own witness is not favorable to the defense and does not raise the probability of a different verdict.") (citations omitted); United States v. Pearson, No. 1:15-CR-193, 2016 WL 7647523, at *4 (E.D. Va. Aug. 11, 2016), aff'd, 676 F. App'x 202 (4th Cir. 2017) ("Defendant's Giglio claim fails at the outset, however, because 'Giglio appl[ies] only to impeachment information relating to a government witness.'"

(quoting United States v. Green, 178 F.3d 1099, 1109 (10th Cir. 1999)); United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711931, at *41 (D.N.M. Feb. 2, 2015) ("Evidence impeaching a defense witness is not discoverable under Giglio."); Johnson v. United States, 683 A.2d 1087, 1105 (D.D.C. 1996) ("[The witness] was a defense witness, and therefore the prosecution did not have to disclose the fact that an offer concerning unrelated charges had been made to him when he was called as part of the defense case.").

However, other courts have found that the government may be obligated to disclose impeachment information even when it does not intend to call the witness as a defendant. See, e.g., United States v. Jackson, 345 F.3d 59 (2d Cir. 2003) ("It is thus clear that Brady and its progeny may require disclosure of evidentiary and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant. A contrary conclusion would permit the government to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify."); United States v. Morrow, No. CRIM.A. 04-355CKK, 2005 WL 3163806, at *8 (D.D.C. Apr. 13, 2005) ("The Circuits appear to be slightly split on this issue, and there appears to be a possible distinction between Brady and Giglio developing between the Circuits. . . . The Court finds the Second Circuit's approach in Jackson to be the more persuasive approach, affording defendants the opportunity for a full and fair trial based on complete access to all relevant exculpatory and impeachment materials and closing a potential hole in Brady jurisprudence. The Court agrees that without such a requirement, the Government could avoid disclosure of potentially exculpatory or impeachment material simply by not calling the relevant witness to testify. Such a holding approaches Brady and Giglio with the abundance of caution that each case requires, erring—if at all—on the side of greater protections for defendants in the quest to maintain a fair and accurate trial while lessening the chance of a

violation.") (citations omitted). In this case, the Government has not cited, and the Court is not aware of, any decision from the Eleventh Circuit addressing this question.[7] The Court need not—and will not—address this apparent split in authority. As laid out below, the Court has reviewed all of the internal investigation files provided by the Government and has not found any information favorable to Defendant in those files. Consequently, the Court will not wade into the question of whether the fact that the officer will not be a government witness obviates any need for the Government to provide impeachment information as to that officer.

As for the Court's review of the investigative files provided by the Government, the Court first notes that those files do not reveal any directly exculpatory information. The allegations against the officer have nothing to do with Defendant or the investigation of this case. Indeed, the allegations pertain to actions taken outside of the officer's employment and do not shed light on the performance of his duties as a police officer. Thus, the files do not contain classic Brady information, such as allegations that the officer planted evidence or falsified reports in this or other cases.

However, that does not end the inquiry. As other courts have found, an officer's untruthfulness during an internal affairs investigation can be used to impeach the officer even when the investigation itself does not pertain to the officer's performance of his official duties. For example, in United States v. Nhung Nguyen, No. 1:04-CR-232 (BBM), 2007 WL 9735541 (N.D. Ga. Feb. 7, 2007), an officer who testified at the defendant's trial was under investigation for allegations of sexual misconduct. The prosecution failed to disclose to defense counsel that,

---

[7] Indeed, the Government does not cite any of the above-referenced cases or any other authority on this question. It simply argues that Defendant cannot call the officer for the sole purpose of impeaching him. (Doc. 74, p. 5.) However, given the officer's position in the apprehension and arrest of Defendant, it is foreseeable that the defense could call the officer for matters other than merely impeaching him. Furthermore, given the officer's unique position, even though the Government may not call him as a witness, he could potentially offer significant inculpatory information against Defendant either when called by the defense or perhaps as an out of court declarant.

during the course of that investigation, the officer was found to have lied to internal affairs investigators. Id. at *6–7. Judge Beverly B. Martin, then of the Northern District of Georgia, found that the prosecution team violated Brady and granted a defendant's motion for a new trial based on that violation. Id. Judge Martin reasoned that the prosecution's failure to equip the defendant with the information meant that the defendant was unable to impeach the officer with the evidence of the officer's lies to internal affairs investigators. Id. at *7–8; see also, United States v. Davis, 183 F.3d 231, 256–57 (3d Cir. 1999) (inquiry into internal affairs determination that police officer lied during an official interview proper grounds for Rule 608(b) impeachment).[8] In this case, the Court reviewed all of the materials that the Government provided, including numerous interviews, to determine if those files contain evidence of untruthfulness similar to that of the officer in Nhung Nguyen.[9] That review did not uncover any evidence of untruthfulness or other information that defense counsel could use to properly impeach the officer in question. The files do not contain any finding or admission that the officer was untruthful during the investigation (or otherwise), or that the officer has been disciplined or "resigned under a cloud" like the officer in Nhung Nguyen. Put simply, the Court

---

[8] Also instructive is Judge Martin's determination that the prosecution in that case "suppressed" the Brady evidence even though it did not have the internal affairs investigator's files until after the trial, meaning the prosecuting attorneys did not know that the officer had lied until after trial. 2007 WL 9735541, at * 6. Prior to trial, however, the United States Attorney's Office knew the Defendant had "resigned under a cloud." Id. Despite this knowledge, the prosecuting attorneys did not question the officer extensively about the internal affairs investigation, request information from the internal affairs investigation by way of a trial subpoena, or follow up on an open records request when it was clear that the internal affairs investigators would not respond. Id. Consequently, Judge Martin rejected the government's argument that it did not suppress the Brady evidence. Id. Thankfully, in the case at hand, the prosecuting attorneys have exercised more diligence and have brought this matter to the Court's attention. However, Judge Martin's decision provides further direction on additional steps the prosecution team must take to fulfill its Brady obligations.

[9] As noted earlier in this Order, the materials in the investigative file included over six hours of interviews, four reports, and over 130 photos.

does not see how the information in the files could be materially favorable to Defendant in this case.

## CONCLUSION

For the reasons set forth above, the Court finds that the information the Government provided to the Court for an *in camera* review does not contain information that would be materially exculpatory to Defendant. Specifically, the Court finds that the files do not contain any information that could be used to impeach the police officer in question. Accordingly, the Court **GRANTS** the Government's Motion to Withhold Disclosure, (doc. 74).

**SO ORDERED**, this 17th day of June, 2019.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA